JEDEDIAH WAKEFIELD (CSB No. 178058)
jwakefield@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300
Facsimile: 415.281.1350

ANNASARA G. PURCELL (CSB No. 295512)
apurcell@fenwick.com
FENWICK & WEST LLP
1191 Second Avenue, 10th Floor
Seattle, WA 98101
Telephone: 206.389.4510
Facsimile: 206.389.451

ARMEN NERCESSIAN (CSB No. 284906)
anercessian@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Telephone: 650.988.8500
Facsimile: 650.938.5200

Attorneys for Defendants
AMAZON, INC. and
AMAZON SERVICES, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

(WESTERN DIVISION – LOS ANGELES)

| | |
|---|---|
| ERIC WEBER and BRYAN REES, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AMAZON, INC. and AMAZON SERVICES, LLC,<br><br>Defendant. | Case No.: 2:17-cv-08868 GW(Ex)<br><br>**REPLY BRIEF IN SUPPORT OF AMAZON'S MOTION TO COMPEL ARBITRATION AND DISMISS CLAIMS AS TO PLAINTIFF ERIC WEBER**<br><br>Date:     April 2, 2018<br>Time:    8:30 AM<br>Crtm:    9D<br>Judge:   Hon. George H. Wu<br>Trial Date: NONE SET |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................ 1

II. ARGUMENT ....................................................................................................... 2

    A. Washington Law Governs Plaintiff's Agreements and This Case. ...... 2

    B. Plaintiff Fails To Create Any Genuine Dispute Regarding His Repeated Agreement to Arbitrate All Disputes Relating to His Use of Amazon. .................................................................................................. 2

        1. There Is No Inconsistency in Amazon's Evidence Regarding Mr. Weber's Account History. ..................................................... 4

        2. Mr. Weber Does Not Raise a Genuine Dispute About Amazon's Evidence of His October 26, 2017 Prime Sign-Up, And His Purchases Through Amazon Are Already a Sufficient Basis to Find Assent and Compel Arbitration. .......... 6

        3. This Court Has Already Rejected Plaintiff's Arguments Based on *Douglas* in the Related McKee Action. ....................... 7

        4. Mr. Weber Fails to Create a Genuine Factual Dispute Over the Sufficiency of Amazon's Check-Out Flow. .......................... 8

    C. Plaintiff's Agreement to Arbitrate Bars This Lawsuit. ....................... 11

III. CONCLUSION ................................................................................................. 13

# TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
207 F.3d 1126 (9th Cir. 2000) ............................................................................... 12

*Cordas v. Uber Techs., Inc.*,
228 F. Supp. 3d 985 (N.D. Cal. 2017) ..................................................................... 6

*Douglas v. United States District Ct. for the Cent. Dist. of Cal.*,
495 F.3d 1062 (9th Cir. 2007) ............................................................................ 3, 7

*Ekin v. Amazon Servs., LLC*,
84 F. Supp. 3d 1172 (W.D. Wash. 2014) ........................................................*passim*

*Fagerstrom v. Amazon.com, Inc.*,
141 F. Supp. 3d 1051 (S.D. Cal. 2015) ...........................................................*passim*

*In re Verisign, Inc., Derivative Litig.*,
531 F. Supp. 2d 1173 (N.D. Cal. 2007) ................................................................. 12

*McKee v. Audible, Inc.*,
No. CV 17-1941-GW(EX), 2017 WL 4685039 (C.D. Cal. July 17, 2017) ........................................................................................................*passim*

*Meyer v. Uber Techs., Inc.*,
868 F.3d 66 (2d Cir. 2017) ............................................................................. 10, 11

*Nicosia v. Amazon.com, Inc.*,
834 F.3d 220 (2d Cir. 2016) ............................................................................. 9, 10

*Peters v. Amazon Servs. LLC*,
2 F. Supp. 3d 1165 (W.D. Wash. 2013), *aff'd*, 669 F. App'x 487 (9th Cir. 2016) .................................................................................................. 7, 12

*Selden v. Airbnb, Inc.*,
No. 16-CV-00933 (CRC), 2016 WL 6476934 (D.D.C. Nov. 1, 2016) ..................................................................................................................... 11

*Wiseley v. Amazon.com, Inc.*,
709 F. App'x 862 (9th Cir. 2017) ..................................................... 2, 7, 10, 11

# TABLE OF AUTHORITIES

**PAGE(S)**

**STATUTES**

Federal Arbitration Act ................................................................................................. 12

**OTHER AUTHORITIES**

Rule 12(b)(6) ............................................................................................................... 9

Rule 56 ...................................................................................................................... 10

## I. INTRODUCTION

In its motion to compel arbitration, Amazon established that Plaintiff Eric Weber—by making literally hundreds of purchases on Amazon, and by signing up to Amazon Prime—repeatedly agreed to arbitrate any dispute relating to his use of Amazon and its services. Amazon also showed that Mr. Weber's claims, which concern allegedly unauthorized charges to a payment method that Mr. Weber kept on file with his Amazon account, relate to his use of Amazon and thus fall within the scope of the arbitration agreement in the Amazon Conditions of Use (the "COUs"). Because his only alleged injury is that Amazon charged the credit card he placed on his Amazon account when he used that account to sign up for Audible, his claims unmistakably "relate to" his use of the Amazon service, and therefore fall within his agreement to arbitrate.

Rather than address Amazon's argument, however, Mr. Weber in his opposition again seeks to quibble with the evidence. He ignores this Court's previous ruling in the related case, *McKee v. Audible, Inc.*, No. CV 17-1941-GW(EX), 2017 WL 4685039, at *11 n.7 (C.D. Cal. July 17, 2017), holding that placing orders through Amazon's check-out flow creates assent to the COUs and the arbitration agreement. Instead, Mr. Weber focuses much of his opposition on attempting to manufacture a factual dispute over whether he signed up for Amazon Prime, which he claims not to recall. While Amazon's records (and Mr. Weber's own admission that he was charged for Prime service) undermines this claim, Plaintiff's arguments about Amazon Prime are a distraction: Mr. Weber's agreement to the Amazon COUs over the course of hundreds of purchases is already a sufficient basis for compelling arbitration. As this Court noted in *McKee*, there is no support for the contention that "repeated purchases that require agreeing to hyperlinked Conditions of Use do not constitute assent to those terms as written at the time of purchase." *McKee*, 2017 WL 4685039, at *11 n.7.

| REPLY ISO AMAZON'S MOT. TO COMPEL ARBITRATION AND DISMISS | 1 | Case No. 2:17-cv-8868 GW(Ex) |

In short, Mr. Weber's opposition fails to create any genuine issue of material fact as to Mr. Weber's assent to the arbitration agreement, and Mr. Weber raises no argument that this dispute falls outside the scope on that agreement. Accordingly, the Court should grant Amazon's motion, compel Mr. Weber's claims against Amazon to arbitration, and dismiss this lawsuit as to Mr. Weber's claims.

## II. ARGUMENT

### A. Washington Law Governs Plaintiff's Agreements and This Case.

Plaintiff maintains that California state law governs this lawsuit. *See* Dkt. 30 ("Opp.") at 7–8. But this Court in the related *McKee* case has already twice held that Washington law governs. *McKee*, 2017 WL 4685039, at *4; *McKee v. Audible, Inc.*, No. 2:17-cv-1941, Dkt. 53 ("Beals Order") at 3-4; *see also Wiseley v. Amazon.com, Inc.*, 709 F. App'x 862, 863 (9th Cir. 2017) (applying Washington law in motion to compel arbitration concerning Amazon COUs). Like the plaintiffs in the related *McKee* case, Mr. Weber insists that California law applies but fails to offer any reason for this Court to depart from its prior decisions. Indeed, he admits that California law and Washington law "should lead the Court to the same conclusion." Opp. at 8. Accordingly, and consistent with its prior rulings on motions to compel arbitration in related cases, the Court should apply Washington law.

### B. Plaintiff Fails To Create Any Genuine Dispute Regarding His Repeated Agreement to Arbitrate All Disputes Relating to His Use of Amazon.

The facts regarding Mr. Weber's agreement to arbitrate all claims related to his use of Amazon are simple. Since 2011, Amazon's COUs have consistently contained an arbitration agreement with a class action waiver provision. Dkt. 28-1 ("Ressmeyer Decl.") at ¶ 3, Ex. 1 at 2-3, Ex. 2 at 4. Customers receive notice of, and must agree to, these COUs whenever they place orders through Amazon's

standard check-out flows, whether on the Amazon desktop or mobile websites or through the Amazon mobile app. *Id.* at ¶ 8, Ex. 9. Between the time that Amazon first adopted its arbitration provision and the filing of his complaint in this action, Mr. Weber placed hundreds of orders on Amazon and thus has repeatedly agreed to the COUs and arbitration provision. *Id.* at ¶ 9, Exs. 10-11; *see also McKee*, 2017 WL 4685039, at *11 n.7 (repeated purchases through Amazon create assent to COUs); *cf. Fagerstrom v. Amazon.com, Inc.*, 141 F. Supp. 3d 1051, 1057-58 (S.D. Cal. 2015) (Amazon check-out flow requires customers to assent to COUs). Mr. Weber also separately agreed to Amazon's Prime Terms, which incorporate the COUs and arbitration provision, when he signed up for Amazon Prime on October 26, 2017. Ressmeyer Decl. at ¶¶ 5-6, Exs. 5-7; *see also McKee*, 2017 WL 4685039, at *11 n.7 (Prime sign-up created assent to COUs); *Ekin v. Amazon Servs., LLC*, 84 F. Supp. 3d 1172, 1178 (W.D. Wash. 2014) (Prime sign-up flow requires customers to assent to Prime terms and arbitration agreement).

In his opposition, Mr. Weber raises a series of misguided arguments to distract from the clear evidence of his assent. *First*, after having confirmed that Amazon located the correct account history, Mr. Weber attempts to cast doubt about the accuracy of Amazon's records by pointing to a "Customer Since 2011" banner that appears on the homepage for one of his Amazon accounts. *See* Opp. at 3-4. *Second*, Mr. Weber tries to sidestep the evidence of the hundreds of purchases he placed through Amazon, which Mr. Weber does not dispute, by focusing instead on the claim that he does not recall signing up for Amazon Prime in October 2017. Opp. at 19-23. *Third*, Mr. Weber devotes the lion's share of his opposition arguing that this Court, under *Douglas v. United States District Ct. for the Cent. Dist. of Cal.*, 495 F.3d 1062 (9th Cir. 2007), should disregard any of the agreements with Amazon he entered into after August 19, 2011, *see* Opp. at 9-18, ignoring the Court's explicit rejection of this precise argument in the related *McKee* action. *See*

*McKee*, 2017 WL 4685039, at *11 n.7. *Fourth*, Mr. Weber's opposition tries to introduce declaration evidence from his counsel to show how customers could theoretically manipulate the display of the Amazon website to deliberately avoid notice of Amazon's COUs, without any statement from Mr. Weber that he did so. As explained in the sections that follow, all these arguments fail.

### 1. There Is No Inconsistency in Amazon's Evidence Regarding Mr. Weber's Account History.

Without disputing any of the underlying transactions that Amazon identified in its opening briefing, Mr. Weber attempts to manufacture doubt about the accuracy of the evidence that Amazon submitted about his customer history. Opp. at 3-4. There is no inconsistency here.

As Amazon explained in its opening briefing, Amazon allows customers to associate the same email address with multiple customer accounts. Ressmeyer Decl. at ¶ 4, Exs. 3-4. According to Amazon's records, Mr. Weber's email address is associated with two separate Amazon accounts: one designated as a merchant account, and a second designated as a non-merchant account. *Id.* Each account has its own home page and is associated with its own password. Declaration of Cami Smith in Support of Reply Brief on Amazon's Motion to Compel Arbitration ("Smith Decl."), *filed concurrently herewith*, at ¶ 3. If Mr. Weber logs in with the password for his merchant account, the home page will reflect customer information from his merchant account; if he logs in with the non-merchant password, it will show information for the non-merchant account. *Id.* Despite Mr. Weber's apparent confusion over his merchant status, his merchant account showed activity up to the time he filed his complaint in this action, whereas his non-merchant account had no activity since July 14, 2013. *Id.*

Mr. Weber attempts to dispute the accuracy of Amazon's record-keeping by submitting a printout of the homepage for the Amazon account designated as a

REPLY ISO AMAZON'S MOT. TO
COMPEL ARBITRATION AND
DISMISS                                   4        Case No. 2:17-cv-8868 GW(Ex)

merchant account, which states that he has been a "Customer Since 2011." *See* Dkt. 30-1 ("Weber Decl.") at ¶ 2, Ex. 1; Smith Decl. at ¶ 4. There is no discrepancy between this home page and the data Amazon submitted in support of its opening papers, as the data that appears in the stripe on the home page reflects the date of the first *transaction* on a customer account, and not the date of customer sign-up. Smith Decl. at ¶ 4. While Amazon's records show that Mr. Weber signed up for a merchant account on December 27, 2004, the records that Amazon submitted in connection with its opening brief also show that he did not place his first recorded order on that account until February 3, 2011. *See* Ressmeyer Decl., Ex. 10; Smith Decl. at ¶ 4. Thus, these records are entirely consistent both with the statement on the home page for Mr. Weber's merchant account that he has been a "Customer Since 2011" and with Mr. Weber's declaration statement that he "started using [his] Amazon account to make purchases in or around February 2011." *Cf.* Weber Decl. at ¶ 2. (Meanwhile, the first transaction on the account designated as a non-merchant account occurred on March 15, 2010. Ressmeyer Decl., Ex. 11.)

As Amazon demonstrated in its opening papers, Mr. Weber placed no fewer than **266 purchase orders for 413 items** between the time Amazon adopted an arbitration agreement in its COUs and the filing of this lawsuit through his Amazon merchant account alone. Ressmeyer Decl. at ¶ 9, Ex. 10. Yet, while he tries to undermine the accuracy of Amazon's records by referring to the "Customer Since 2011" stripe on his home page, Mr. Weber tellingly does not dispute any of the actual details that Amazon has presented about these transactions, such as the dates they occurred, the order numbers, or the overall volume. Nor can he, as there is no genuine discrepancy concerning Mr. Weber's account history.

//
//
//

REPLY ISO AMAZON'S MOT. TO COMPEL ARBITRATION AND DISMISS     5     Case No. 2:17-cv-8868 GW(Ex)

### 2. Mr. Weber Does Not Raise a Genuine Dispute About Amazon's Evidence of His October 26, 2017 Prime Sign-Up, And His Purchases Through Amazon Are Already a Sufficient Basis to Find Assent and Compel Arbitration.

Mr. Weber attempts to controvert Amazon's showing that he signed up for Prime on October 26, 2017, but he fails to raise any genuine dispute regarding Amazon's evidence. Mr. Weber admits that he was charged on October 26, 2017 for an Amazon Prime membership. Weber Decl. at ¶ 5. Rather than deny the sign-up occurred, he argues merely that he "did not *intentionally* sign up for a new Amazon Prime membership" and invents several reasons why he would not have seen disclosures of the Prime Terms even if he were presented with them. *Id.* (emphasis added); *see also* Opp. at 5. In short, Mr. Weber "offers no evidence to rebut [Ms. Ressmeyer's] reasoned declaration other than his own conclusory allegations that he never received notice of the terms and conditions and that [the] declaration is false and inadequate." *Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985, 989–90 (N.D. Cal. 2017) (rejecting plaintiff's attempt to raise purported deficiencies with Uber's sign-up disclosures based on font, screen size, etc. and granting motion to compel arbitration, where plaintiff failed to offer any testimony or evidence regarding what disclosures he did see). Thus, like the plaintiff in *Cordas*, Mr. Weber's contentions do not raise any genuine dispute of material fact over his Amazon Prime sign-up.

In all events, Amazon need not (as Mr. Weber's opposition appears to suggest) rely on Mr. Weber's October 26, 2017 Prime sign-up to order this dispute into arbitration. Mr. Weber's hundreds of purchase orders on Amazon on their own are already a sufficient basis for compelling arbitration of his claims and this lawsuit.

REPLY ISO AMAZON'S MOT. TO COMPEL ARBITRATION AND DISMISS         6         Case No. 2:17-cv-8868 GW(Ex)

### 3. This Court Has Already Rejected Plaintiff's Arguments Based on *Douglas* in the Related *McKee* Action.

Mr. Weber devotes the bulk of his opposition to the argument that any agreement between Mr. Weber and Amazon after August 2011 is ineffective, because Amazon did not send a notice about modifying the COUs to add an arbitration agreement. *See* Opp. at 9-18. In doing so, he asks this Court to disregard **six years of agreements over the course of hundreds of purchase orders** that he placed through Amazon.

There is no legal or logical support for such a position. Indeed, when counsel advanced this same argument with respect to Plaintiff Grant McKee's purchase history in the related *McKee* action, this Court rejected it. The Court expressly rejected the reading of *Douglas* that Mr. Weber now advances, noting that "no district court has applied *Douglas* to hold that repeated purchases that require agreeing to hyperlinked Conditions of Use do not constitute assent to those terms as written at the time of purchase." *McKee*, 2017 WL 4685039, at *11 n.7. Moreover, the Court found that the Amazon COUs adequately placed customers on notice that COUs "changed over time" and directed them to carefully review those terms,[1] and it ultimately compelled Plaintiff McKee's claims against Amazon to arbitration. *Id.* The result should be no different here: Mr. Weber, like Mr. McKee, placed hundreds of purchase orders through Amazon, and in doing so repeatedly agreed to the same COUs and arbitration agreement as Mr. McKee did.

---

[1] While Mr. Weber appears to challenge the propriety of the modifications provision of the Amazon COUs, he does not appear to challenge the enforceability of the COUs and arbitration based on unconscionability, as the plaintiffs in the related *McKee* action have. Several courts, including this one, have repeatedly considered the Amazon arbitration agreement and found it valid and enforceable. *McKee*, 2017 WL 4685039, at *12-14; *accord Ekin, v. Amazon Servs., LLC*, 84 F. Supp. 3d 1172 (W.D. Wash. 2014); *Fagerstrom*, 141 F. Supp. 3d at 1064, *aff'd sub nom. Wiseley v. Amazon.com, Inc.*, 709 F. App'x 862 (9th Cir. 2017); *Peters v. Amazon Servs. LLC*, 2 F. Supp. 3d 1165, 1170 (W.D. Wash. 2013), *aff'd*, 669 F. App'x 487 (9th Cir. 2016).

REPLY ISO AMAZON'S MOT. TO COMPEL ARBITRATION AND DISMISS     7     Case No. 2:17-cv-8868 GW(Ex)

FENWICK & WEST LLP
ATTORNEYS AT LAW

### 4. Mr. Weber Fails to Create a Genuine Factual Dispute Over the Sufficiency of Amazon's Check-Out Flow.

Mr. Weber also attempts to create uncertainty regarding the sufficiency of Amazon's disclosures by introducing evidence concerning purported deficiencies in Amazon's mobile and desktop check-out disclosures through his counsel. *See* Dkt. 30-3 ("Soderstrom Decl.") at ¶ 4, Exs. 2-3, and Opp. at 23-24. This evidence is misleading, and Mr. Weber does not claim that he placed any purchase orders by these means. *See generally* Weber Decl.

This Court should reject Mr. Weber's gambit. As this Court has previously noted in the related action, constructive notice of arbitration terms "is generally clear where the user is actually required to, and does click a button explicitly agreeing to the terms of the contract, even if the user does not actually read the terms of services." *McKee*, 2017 WL 4685039, at *6; Beals Order at 8. Mr. Weber's opposition fails to create any genuine dispute as to whether Amazon provided Mr. Weber with reasonable notice of the COUs.

*First*, with respect to Amazon's mobile check-out flow, Plaintiff's counsel offers screenshots from Amazon's mobile app and website that purport to show a "Place your order" button without a disclosure next to it. Soderstrom Decl. at ¶ 4, Ex. 2. These screenshots are misleading: they show only the bottom portion of the mobile check-out page, and they omit the clear disclosures that a customer sees *at the top of the page* every time he makes a purchase through the standard check-out flow both on the Amazon mobile website and the Amazon mobile app. Declaration of Karen Ressmeyer in Support of Reply Brief on Motion to Compel Arbitration, at ¶ 2, Ex. A. At the top of the check-out screen for both the Amazon mobile website and the Amazon mobile app is a hyperlinked disclosure that reads: "By placing your order, you agree to Amazon.com's privacy notice and conditions of use." Ressmeyer Decl. at ¶ 8, Ex. 9. This disclosure appears immediately above a button

stating "Place your order," and the language "conditions of use" in these disclosures is a blue highlighted hyperlink to the Amazon Conditions of Use. *Id.*

Whenever Mr. Weber used the mobile check-out flow, he necessarily would be shown this disclosure at the top of the page, immediately above the "Place your order" button. In his declaration, Mr. Weber admits that he "make[s] many, but not all, of [his] purchases on Amazon.com using [his] smartphone" usually by "clicking a 'Place your order' or similar button . . . ." Weber Decl. at ¶ 4. Any one of the purchase orders Mr. Weber placed through the mobile check-out flow would itself furnish a sufficient basis for compelling this lawsuit to arbitration, and nowhere does Mr. Weber allege that he scrolled *past* the disclosure at the top of the mobile check-out screen to click a "Place Your Order" button to complete a purchase.

*Second*, there is no question that Mr. Weber also made purchases through the desktop checkout page, which courts have repeatedly found create assent to Amazon's COUs. In his declaration, Mr. Weber admits that he makes "many, but not all, of [his] purchases on Amazon.com using [his] smartphone." Weber Decl. ¶ 4. Because "not all" of his purchases were on his smart phone, the others were on the desktop checkout page.

Facing this fact, counsel for Mr. Weber attempts to manufacture doubt by introducing desktop check-out pages from *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220 (2d Cir. 2016), where the court denied Amazon's Rule 12(b)(6) motion to dismiss. *See* Soderstrom Decl. at ¶ 4, Ex. 3. But *Nicosia* is not binding law in this circuit, arose in a significantly different legal posture, and has no applicability to this case.[2] Indeed, the Southern District of California in *Fagerstrom* granted

---

[2] In *Nicosia*, the Second Circuit considered a motion to dismiss under Rule 12(b)(6), not a motion to compel arbitration. 834 F.3d at 230. By the decision's own terms, the usual standard did not apply because the "motion to dismiss neither sought an order compelling arbitration nor indicated that Amazon would seek to force Nicosia to arbitrate in the future." *Id.* Accordingly, the court applied the plausibility standard under Rule 12(b)(6) instead. *Id.* But the panel also clarified that it did "not hold that there was no objective manifestation of mutual assent [t]here as a matter of law." *Id.* The Second Circuit further limited the potential

| REPLY ISO AMAZON'S MOT. TO COMPEL ARBITRATION AND DISMISS | 9 | Case No. 2:17-cv-8868 GW(Ex) |

Amazon's motion to compel arbitration based on exactly the same desktop check-out screen that the Second Circuit reviewed in *Nicosia*. *Compare* Soderstrom Decl., Ex. 3, *with Fagerstrom*, 141 F. Supp. 3d at 1069 (describing Weitmann Decl., Ex. C), *and* Declaration of Jedediah Wakefield in Support of Reply Brief on Amazon's Motion to Compel Arbitration, Ex. A (attaching Weitmann Decl., Ex. C). The Ninth Circuit recently affirmed the district court's grant of the motion to compel arbitration in *Fagerstrom*, based on the very disclosures that Mr. Weber now attempts to use to undermine Amazon's claim: "The notices on Amazon's check-out and account registration pages, which alerted Wiseley that clicking the corresponding action button constituted agreement to the hyperlinked COU, were in sufficient proximity to give him a 'reasonable opportunity to understand' that he would be bound by additional terms." *Wiseley,* 709 F. App'x at 864 (affirming the *Fagerstrom* court's ruling); *see also Ekin*, 84 F. Supp. 3d at 1173 (same with Prime sign-up).

Notwithstanding Mr. Weber's hand-waving, the facts, even as to these older desktop checkout screens, are simple. These screens contain a hyperlinked disclosure at the top of the page that reads "By placing your order, you agree to Amazon.com's <u>privacy notice</u> and <u>conditions of use</u>." *See* Soderstrom Decl., Ex. 3. This disclosure is immediately under the "Review your order" heading and near the "Place your order" button to make a purchase. *Id.* As the Ninth Circuit has concluded, this creates notice and assent.

The fact that Amazon's desktop check-out flow years ago had a slightly different but nevertheless enforceable layout does not create any genuine issue of

---

reach of *Nicosia* in *Meyer v. Uber Techs., Inc.*, 868 F.3d 66 (2d Cir. 2017), applying the usual Rule 56 summary judgment standard to evaluate a motion to compel arbitration based on a user sign-up through the Uber mobile app. *Id. at* 74. The *Meyer* court noted that "[a]s long as the hyperlinked text was itself reasonably conspicuous—and we conclude that it was—a reasonably prudent smartphone user would have constructive notice of the terms." *Id.* at 79. Notably, although Amazon raised the *Meyer* case in its opening brief, *see* Motion at 7-8, Mr. Weber failed even to address it in his opposition.

REPLY ISO AMAZON'S MOT. TO
COMPEL ARBITRATION AND
DISMISS                                                10                        Case No. 2:17-cv-8868 GW(Ex)

fact concerning Mr. Weber's assent. Whether under the desktop check-out flows approved in *Fagerstrom* and *Wiseley*, or under the more recent layout included the same disclosure language immediately underneath the "Place your order" button, Mr. Weber had reasonable notice of Amazon's COUs and agreed to them when placing orders through the desktop website.

Mr. Weber attempts to distinguish *Fagerstrom* and *Ekin*, arguing that the issues of contract formation were not at issue in those cases. *See* Opp. at 17-18. But this misses the fundamental point: assent was not at issue, because the question of reasonable notice was so obvious. As Amazon's motion points out, at all times its check-out disclosures have been similar to those that courts have uniformly approved in granting motions to compel arbitration. *Cf. Meyer,* 868 F.3d at *77 ("Register" button above notice stating that, "by creating an Uber account," users agreed to terms of service); *Selden v. Airbnb, Inc.,* No. 16-CV-00933 (CRC), 2016 WL 6476934, at *5 (D.D.C. Nov. 1, 2016) (hyperlinked disclosure stating "By signing up, I agree to Airbnb's Terms of Service" in close proximity to the sign-up buttons).

Mr. Weber placed hundreds of orders on Amazon, usually—and by his own admission—by clicking a "Place Your Order" button that the evidence shows was accompanied by hyperlinked disclosures that by doing so, he was agreeing to Amazon's COUs. He cannot now avoid those agreements simply by claiming not to remember them.

**C.     Plaintiff's Agreement to Arbitrate Bars This Lawsuit.**

Mr. Weber's opposition does not appear to dispute that the arbitration agreement in the Amazon COUs cover this dispute. Nor can he. That arbitration agreement covers "**[a]ny dispute or claim relating in any way to your use of any Amazon Service, or to any products or services sold or distributed by Amazon or through Amazon.com . . . .**" Ressmeyer Decl. at ¶ 3, Ex. 2 at 4 (bold in

original). This "broad and far reaching" language of the arbitration clause "leaves little doubt that the dispute [here] is subject to arbitration." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000) (ordering arbitration as breadth of arbitration agreement and federal policy favoring arbitration embodied in the Federal Arbitration Act "leaves no place for the exercise of discretion by a district court") (internal quotations and citations omitted); *see also In re Verisign, Inc., Derivative Litig.*, 531 F. Supp. 2d 1173, 1224 (N.D. Cal. 2007) (holding that arbitration agreement that covered "any other services provided by . . . KPMG," and disputes and claims involving "any entity for whose benefit the services in question are or were provided" had broad scope and *retroactive effect*). Indeed, courts examining the substantially identical arbitration agreement have found that its use of "any dispute" language gave the agreement broad scope: "[W]hen arbitration agreements contain broad 'relating to any dispute' language, both future *and past disputes* are included in the scope of the arbitration agreement." *Ekin*, 84 F. Supp. 3d at 1178 (emphasis added) (arbitration agreement in Amazon COUs had retroactive effect); *see also Peters,* 2 F. Supp. 3d at 1173 (same with business services agreement).

Mr. Weber's claim relates to allegedly unauthorized charges to a credit card he placed on his Amazon account, and therefore falls squarely within the scope of his arbitration agreement with Amazon. *See* Dkt. 1 at ¶¶ 14-17. More specifically, Mr. Weber's primary grievance relates to the claim that he received a charge on a credit card that he provided in the first instance to Amazon, after using his Amazon account to sign up for Audible, an Amazon subsidiary. *Id.* Mr. Weber's claims relate to his use of the Amazon Service. Thus, Mr. Weber's claims fall squarely within the scope of his arbitration agreement with Amazon, and this Court should compel arbitration as to Mr. Weber.

//

## III. CONCLUSION

Mr. Weber's opposition fails to raise any material dispute about Mr. Weber's repeated assent to arbitrate their respective claims in this lawsuit. He repeatedly agreed to arbitrate any dispute relating to his use of Amazon by placing hundreds of purchase orders through Amazon and by signing up to Amazon Prime. Those agreements bar this lawsuit, and the Court should compel arbitration. Accordingly, Amazon asks this Court to compel these claims to arbitration and dismiss them with prejudice.

Dated: March 22, 2018

FENWICK & WEST LLP

By: */s/ Jedediah Wakefield*
Jedediah Wakefield

Attorneys for Defendants AMAZON, INC. and AMAZON SERVICES, LLC