JEDEDIAH WAKEFIELD (CSB No. 178058)
jwakefield@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300
Facsimile: 415.281.1350

ANNASARA G. PURCELL (CSB No. 295512)
apurcell@fenwick.com
FENWICK & WEST LLP
1191 Second Avenue, 10th Floor
Seattle, WA 98101
Telephone: 206.389.4510
Facsimile: 206.389.4511

ARMEN NERCESSIAN (CSB No. 284906)
anercessian@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Telephone: 650.988.8500
Facsimile: 650.938.5200

Attorneys for Defendants
AMAZON.COM, INC. and
AMAZON SERVICES LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

(WESTERN DIVISION - LOS ANGELES)

| | |
|---|---|
| ERIC WEBER and BRYAN REES, <br><br> Plaintiffs, <br><br> v. <br><br> AMAZON.COM, INC., and AMAZON SERVICES LLC, <br><br> Defendants. | Case No.: 2:17-cv-08868-GW(Ex) <br><br> **DEFENDANT'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO COMPEL ARBITRATION** <br><br> Judge: George H. Wu <br> Trial Date: NONE SET |

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................... 1

ARGUMENT .......................................................................................................... 2

    I.    *DOUGLAS* DOES NOT APPLY TO CASES WHERE A CUSTOMER AFFIRMATIVELY ACCEPTS REVISED TERMS OF USE. ........................................................................... 2

        A.    *Douglas* Addresses Only Cases Where Inaction is Offered as Proof of Assent. ................................................................. 2

        B.    The Concerns Articulated by the *Douglas* Court are Inapplicable to Cases Requiring Subsequent Assent to Terms. ............................................................................................. 4

    II.    WEBER ASSENTED TO AMAZON'S CURRENT TERMS BY MAKING PURCHASES AFTER ACKNOWLEDGING THE MODIFIED TERMS VIA SWORN DECLARATION. .............. 6

CONCLUSION ....................................................................................................... 7

# TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

*Badie v. Bank of Am.*,
  67 Cal. App. 4th 779 (1998) .................................................................................. 3

*Douglas v. District Court*,
  495 F.3d 1062 (2007) ............................................................................... 1, 2, 3, 4

*Nevarez v. Forty Niners Football Co., LLC*,
  No. 16-CV-07013, 2017 WL 3492110 (N.D. Cal. Aug. 15, 2017) ....................... 5

*Rodman v. Safeway Inc.*,
  No. 11-cv-03003-JST, 2015 WL 604985 (N.D. Cal. Feb. 12, 2015) .................... 3

*Sawyer v. Bill Me Later*,
  No. 10-04461 SJO, 2010 WL 5289537 (C.D. Cal. Oct. 4, 2010) ......................... 3

*Wash. Fed. Sav. & Loan Ass'n v. Alsager*,
  266 P.3d 905 (Wash. Ct. App. 2011) .................................................................... 5

# INTRODUCTION

In *Douglas v. District Court*, the Ninth Circuit considered the question of whether a party could unilaterally modify contract terms by posting revised terms on its website, provide no notice of any changes to the terms to customers, and then interpret a customer's failure to cancel his contract as assent to the revised terms. 495 F.3d 1062 (2007). That is not the issue here. The question this case presents is whether a party that affirmatively assents to revised terms can decline to be bound by them because he had not realized that the terms had changed from an older set of terms. No court has ever interpreted *Douglas* so broadly, and the Court should decline to do so here.

First, no authority supports interpreting *Douglas* to hold that Plaintiff is not bound by Amazon's current Conditions of Use (COU). Each case Plaintiff relies on (including *Douglas*) is distinguishable because the customer had not provided affirmative consent to revised terms through a subsequent transaction requiring agreement to those terms. Plaintiff's argument boils down to a claim that he should be permitted simply to assume that old terms that applied to one transaction at one point in time will remain unchanged, even when he is told the terms can change, and is required to agree to terms in new transactions years later. No court has endorsed that view, and this Court should not be the first to do so.

Moreover, this Court need not even consider the issues raised under *Douglas* because Plaintiff assented to Amazon's current COU after receiving notice that they had changed. On March 8, Mr. Weber submitted a declaration stating that he had *previously* been unaware that Amazon had modified its terms. Later that week Mr. Weber placed an order with Amazon and assented to the current COU, with full knowledge that it differed from the February 2011 COU. By assenting to the current COU after acknowledging that they had been changed, Plaintiff destroyed the argument that he lacked notice of any change.
DEFENDANT'S SUPPLEMENTAL
BRIEF ISO MOTION TO COMPEL
ARTBITRATION                           1           Case No. 2:17-cv-8868-GW(Ex)

# ARGUMENT

## I. *DOUGLAS* DOES NOT APPLY TO CASES WHERE A CUSTOMER AFFIRMATIVELY ACCEPTS REVISED TERMS OF USE.

### A. *Douglas* Addresses Only Cases Where Inaction is Offered as Proof of Assent.

In *Douglas*, the parties had agreed to a long-term service contract for telephone service. 495 F.3d at 1065. After the parties entered that contract, the defendant (Talk America) purported to add an arbitration provision to the contract. *Id.* When it did so, it did not provide existing customers with any notice of the new terms. *Id.* It also did not require current customers to manifest their assent in any way to those terms. *Id.* In addition, Mr. Douglas presented evidence that because he pre-authorized the defendant to automatically charge his credit card, he never had to go to defendant's website to continue using his service contract. *Id.* at 1066.

On those facts, the *Douglas* court concluded that Talk America could not bind Douglas to the revised terms because he had never accepted them. In the court's words, "a revised contract is merely an offer and does not bind the parties until it is accepted." 495 F.3d at 1066. The only basis for assent offered by Talk America was Douglas's *inaction*—Douglas failed to cancel his contract after Talk America posted the revised terms on its website. *Id.* The Court concluded that where mere continued use of a service was asserted for the basis of assent, "such assent can only be inferred after [plaintiff] received proper notice of the proposed changes." *Id.*

*Douglas* is completely distinguishable from this case. Here, Weber actively agreed to Amazon's arbitration provision in separate, new transactions years after his original transaction. In contrast, in *Douglas* there were no subsequent transactions in which the customer was presented with the modified contract and asked to provide assent. Thus, unlike the defendant in *Douglas*, Amazon is not

FENWICK & WEST LLP
ATTORNEYS AT LAW

relying on inaction; rather, it is relying on Weber's affirmative assent to then current terms by engaging in new transactions.[1]

*Rodman v. Safeway Inc.*, which relies on *Douglas*, is similarly distinguishable in that customers never provided assent to revised contract terms and therefore were not bound by terms to which they did not agree.  Case No. 11-cv-03003-JST, 2015 WL 604985, at *11 (N.D. Cal. Feb. 12, 2015).  The court in *Rodman* held that Safeway's modified terms did not apply to customers who had agreed to the original terms, because Safeway buried the modified terms in browserwrap and did not make customers assent to them at checkout.  *See id.* ("[Customers] could have completed all their subsequent purchases on Safeway.com without ever visiting the webpage hosting the revised Special Terms which Safeway claims governed the sale *and without ever clicking anything on the website that would indicate that they have agreed to those terms*.") (emphasis added).  Thus the *Rodman* court seemed to acknowledge that if customers had clicked on anything indicating acceptance of the updated terms, those terms would have governed.  Here, in contrast, Weber clicked on a button indicating that he accepted Amazon's COU in new purchase transactions after the arbitration provision was added.

Amazon has found no instance of a court holding that where a customer actively assented to revised Terms of Service, that consent was ineffective because the customer had once agreed to older terms of service.  Rather, when parties enter subsequent transaction and agreements, the parties effectively enter into the contract anew.  *See, e.g.*, *Sawyer v. Bill Me Later*, No. 10-04461 SJO (JCGx), 2010 WL 5289537, at *3 (C.D. Cal. Oct. 4, 2010) (distinguishing *Douglas* and holding that plaintiff consented to modified term, due in part to plaintiff's subsequent

---

[1] *Badie v. Bank of Am.*, which the Douglas court relied on, also involved a single ongoing transaction (an interest-earning bank account) and no subsequent transactions involving assent. 67 Cal. App. 4th 779 (1998).

purchases). Accordingly, *Douglas* simply stands for the proposition that the ordinary rules of contract law – including the rule that mutual assent is required to form a contract– still apply even where the parties have an existing agreement. As this Court has previously noted, mutual assent for all contracts is analyzed according to principles of actual or constructive notice: whether the clickwrap or browserwrap have put a reasonably prudent user on inquiry notice. *See, e.g.*, Dkt. 35 at 9-12. The browsewrap that Talk America used to display its new terms would never have sufficed to form an agreement for the initiation of a contract, and therefore it could not form an agreement for the modification of a contract either. Here, as this Court and many others have already recognized, Amazon's checkout process is adequate to provide evidence of assent, and therefore Weber assented to the then current terms each time he made a purchase.

### B. The Concerns Articulated by the *Douglas* Court are Inapplicable to Cases Requiring Subsequent Assent to Terms.

In concluding that inaction could not provide evidence of assent in the absence of notice, the *Douglas* court made clear why a contrary ruling would be infeasible: generally speaking, "[p]arties to a contract have no obligation to check the terms on a periodic basis to learn whether they have been changed by the other side." 495 F.3d at 1066. Indeed, the Court noted that because Talk America claimed the right to change the terms at any time and to construe inaction as consent, customers "would have had to check the contract every day for possible changes." *Id.* n. 1. This would, of course, be an impermissible burden if simply continuing to use one's phone service would be construed as assent to modified terms of which one was unaware.

Here, by contrast, there is no plausible argument that Mr. Weber would have had to check Audible's COUs every day to see if they had been unilaterally changed, as Amazon is not asserting that Mr. Weber assented to the revised COU

DEFENDANT'S SUPPLEMENTAL
BRIEF ISO MOTION TO COMPEL
ARBITRATION                4                Case No. 2:17-cv-8868-GW(Ex)

FENWICK & WEST LLP
ATTORNEYS AT LAW

simply by failing to terminate his Amazon account. To the contrary, all Mr. Weber had to do was read the COU before he entered into new transactions with Amazon that expressly required him to agree to the COU in order to do so. While Mr. Weber may have chosen not to actually look at the COU when he agreed to them, this does eliminate his knowing consent to them. *See, e.g.*, *Wash. Fed. Sav. & Loan Ass'n v. Alsager*, 266 P.3d 905, 907 (Wash. Ct. App. 2011) ("A fundamental principle of Washington contract law is that a party to a contract which he has voluntarily signed will not be heard to declare that he did not read it, or was ignorant of its contents.") (internal quotation marks omitted).

The law is clear that merely having to click on a hyperlink and review Terms of Service before making a purchase is not unduly burdensome on consumers. *See Nevarez v. Forty Niners Football Co., LLC,* No. 16-CV-07013, 2017 WL 3492110, at *8 (N.D. Cal. Aug. 15, 2017). But it bears emphasis here that as a factual matter, Mr. Weber did *not* in fact need to read the entire COU every time he made a purchase to know what terms he was agreeing to. Ever since the 2011 update in which Amazon added the arbitration provision to its COU, Amazon has placed at the top of the COU—in large, offset font—text stating when the COU were last updated. *See* Joint Statement of Stipulated Facts (Dkt. 39) ¶¶ 3-13, Exs. C-M. Thus each time that Mr. Weber made a purchase, he could have simply clicked on the provided hyperlink and immediately seen whether the COUs had been updated. Again, the law is clear that this is not unduly burdensome.

To the extent that Mr. Weber simply assumed that Amazon's COU would remain unchanged for years, any such assumption would not be reasonable. The terms to which Mr. Weber first agreed in 2011 expressly provided that "We reserve the right to make changes to our site, policies, and these Conditions of Use at any time." *See* Joint Stipulation Ex. C. This put Mr. Weber on notice that if he were to agree to Amazon's COU in the future, they might not be the same terms to which

DEFENDANT'S SUPPLEMENTAL
BRIEF ISO MOTION TO COMPEL
ARBITRATION      5      Case No. 2:17-cv-8868-GW(Ex)

he agreed in the past. For Mr. Weber to have chosen not to click on the hyperlink provided to him each time he provided his assent to quickly see if this was the case does not mean he is not bound to later terms. Were this the case, a customer who rented a car in 2018 and agreed to terms of use could claim that he was not bound by those terms simply because he rented a car from the same company in 2011, and assumed that the terms he agreed to were the same. This is not the law.

While Plaintiff may argue that this case is different than the above example because of the frequency with which he makes purchases from Amazon, the facts would not support such an argument. There are several extended periods in which Plaintiff did not make a single purchase from Amazon. *See, e.g.*, Joint Stipulation Ex. O (showing that between December 26, 2013 and January 21, 2015, Weber made only a single purchase). A reasonably prudent person would not assume that an online retailer's terms of use had remained unchanged for seven years, particularly when he had allowed considerable stretches of time to elapse without visiting the website, and where the website expressly informed users that it would change its terms of use from time to time.

## II. WEBER ASSENTED TO AMAZON'S CURRENT TERMS BY MAKING PURCHASES AFTER ACKNOWLEDGING THE MODIFIED TERMS VIA SWORN DECLARATION.

On March 8, 2018, Plaintiffs submitted Mr. Weber's Declaration in Support of His Opposition to Amazon's Motion to Compel Arbitration signed and dated by Mr. Weber on March 7, 2018. *See* Dkt. 30-1. In his declaration, Mr. Weber stated: "I did not know that Amazon has periodically and unilaterally modified the contract terms I agreed to." Dkt. 30-1 at 2. By this statement, Mr. Weber acknowledged that at that time he knew Amazon's terms had changed since he signed up in February 2011. Weber's declaration also establishes that he knew specifically that the COUs contained an arbitration provision.

DEFENDANT'S SUPPLEMENTAL
BRIEF ISO MOTION TO COMPEL
ARBITRATION            6            Case No. 2:17-cv-8868-GW(Ex)

FENWICK & WEST LLP
ATTORNEYS AT LAW

Within a week of signing that declaration, Weber agreed to be bound by Amazon's COUs: Plaintiffs have stipulated that on March 13, 14, and 18 of 2018, Mr. Weber made purchases using Amazon's standard checkout flow. *See* Joint Stipulation ¶ 15. Plaintiffs have further stipulated that during each of these purchases, Mr. Weber was presented with language stating "By placing your order you agree to Amazon.com's privacy notice and conditions of use." This Court has already tentatively concluded that the purchase page on which Mr. Weber made these subsequent purchases puts users on notice of Amazon's COU such that completing a purchase constitutes assent to those terms. *See* Dkt. 35 at 14 ("The Court would thus find, provided Amazon is able to establish that Weber actually made a purchase using one of the standard Flows, and Plaintiffs' modification based argument notwithstanding, that Weber agreed to the COU and the arbitration provision contained therein.").

Plaintiff cannot reasonably claim that when he agreed to be bound by Amazon's COU on March 13, 2018, he believed that those terms were the same as the terms he accepted in early 2011. With full knowledge that the terms required arbitration, Plaintiff chose to enter into seven new transactions with Amazon, agreeing each time to be bound by the COU. Because Weber agreed to Amazon's COU with knowledge that these terms had been modified since his initial signup, the Court need not consider Plaintiff's arguments under *Douglas*.

## CONCLUSION

For the reasons stated above, the Court should find that Weber assented to Amazon's current COU.

Dated: April 20, 2018     FENWICK & WEST LLP

By: */s/ Jedediah Wakefield*
Jedediah Wakefield

Attorneys for Defendants AMAZON.COM, INC. and AMAZON SERVICES LLC