**Jamin S. Soderstrom, Bar No. 261054**
**jamin@soderstromlawfirm.com**
**SODERSTROM LAW PC**
**3 Park Plaza, Suite 100**
**Irvine, California 92614**
**Tel: (949) 667-4700**
**Fax: (949) 424-8091**

***Counsel for Plaintiffs and the Proposed Class***

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**ERIC WEBER and BRYAN REES, individually and on behalf of all others similarly situated,**

**Plaintiffs,**

**v.**

**AMAZON.COM, INC. and AMAZON SERVICES LLC,**

**Defendants.**

**Case No. 2:17-cv-08868 GW (Ex)**

**PLAINTIFF ERIC WEBER'S SUPPLEMENTAL BRIEF IN OPPOSITION TO AMAZON'S MOTION TO COMPEL ARBITRATION AND DISMISS CLAIMS**

Date: June 4, 2018
Time: 8:30 a.m.
Courtroom: 9D
Judge: Hon. George H. Wu
Trial Date: None Set

# TABLE OF CONTENTS

**Page(s)**

I. Amazon's withdrawal of its Amazon Prime-based arguments calls into question the veracity and reliability of Amazon's self-serving evidence. ............................ 1

II. There is no evidence that Weber pressed a button with a disclosure of Amazon's COU next to it on any of the Agreed Purchase Dates........................................... 3

III. Amazon did not give Weber any notice of its *modified* COU................................ 4

IV. The Court should not infer from Weber's participation in this case that he now has actual knowledge of Amazon's arbitration clause (he does not)............................ 6

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Applebaum v. Lyft, Inc.*, 263 F. Supp. 3d 454, 469-70 (S.D.N.Y. June 26, 2017) .......... 7

*Douglas v. U.S. Dist. Ct.*, 495 F.3d 1062 (9th Cir. 2007) .......... 5

*Nevarez v. Forty Niners Football Co., LLC*, 2017 WL 3492110 (N.D. Cal. Aug. 15, 2017) .......... 6

*Plazza v. Airbnb, Inc.*, 2018 WL 583122 (S.D.N.Y. Jan. 26, 2018) .......... 5

*Rodman v. Safeway Inc.*, 2015 WL 604985 (N.D. Cal. Feb. 12, 2015) .......... 6

*Sawyer v. Bill Me Later, Inc.*, 2010 WL 5289537 (C.D. Cal. Oct. 4, 2010) .......... 6

*Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136 (9th Cir. 1991) .......... 2, 4

**Rules**

Fed. R. Civ. P. 23(d) .......... 7

Fed. R. Civ. Proc. 11 .......... 1

For Amazon to prevail on its motion, the Court must draw multiple inferences in Amazon's favor instead of Weber's favor and adopt a new rule that shifts the burden of discovering modified contract terms to consumers. The Court should deny the motion.

## I. Amazon's withdrawal of its Amazon Prime-based arguments calls into question the veracity and reliability of Amazon's self-serving evidence.

In the Joint Statement of Stipulated Facts, Amazon said it is "no longer relying on Mr. Weber's sign up with Amazon Prime as a basis to compel arbitration for purposes of this motion." Dkt. 39 at 6. This is another example of Amazon withdrawing an argument it knew was not supported by evidence or it would have known was not supported by evidence had it conducted a reasonable inquiry into its business records *before* filing its motion. *See* Fed. R. Civ. Proc. 11 (factual contentions must have evidentiary support and representations must be made *after* a reasonable inquiry).

Amazon's motion relied heavily on the argument that Weber, like Grant McKee, had inquiry notice of Amazon's *modified* COU and arbitration clause because certain undisclosed business records proved Weber (i) visited the Amazon Prime sign-up webpage on October 26, 2017 using a computer or smartphone, and (ii) clicked or pressed a button next to a disclosure of the Amazon Prime Terms (which incorporated Amazon's COU "as changed over time"). Dkt. 28. Weber challenged the fact of his sign-up (stating he never intentionally signed up for Amazon Prime) and the reliability of Amazon's evidence (which conveniently was the same form of evidence the Court relied on to dismiss McKee's claims). Dkt. 30; Dkt. 30-1 ¶¶ 4-5. Amazon's reply stood by its sworn testimony, argued Weber was trying to "manufacture a factual dispute" where none existed, and resisted discovery of its undisclosed business records. Dkt. 33.

After the Court ordered Amazon to engage in informal discovery Amazon admitted that its business records showed Weber did not purchase Amazon Prime using the sign-up webpages it submitted with its motion. Soderstrom Supp. Decl. ¶ 2. Contrary to its sworn testimony, Amazon's business records (which it still refused to produce) showed that Weber somehow purchased Amazon Prime when setting up or using his new

Amazon "Fire TV Stick" on his television. *Id.* Weber did not know this was even possible, and he did not intentionally purchase Amazon Prime using his television. Weber Supp. Decl. ¶ 4; Dkt. 30-1 ¶ 5. Amazon withdrew its Amazon Prime-based arguments without explanation, thereby suggesting to the Court that it simply had greater confidence in its other arguments. Dkt. 39 at 6; Soderstrom Supp. Decl. ¶ 2.

Amazon's withdrawal of its Amazon Prime-based arguments shows a troubling pattern[1] of filing motions, refusing to submit business records it swears were reviewed, resisting discovery, and withdrawing arguments with no evidentiary support. If Weber had not pushed for proof that documents supported Amazon's sworn testimony, and if the Court had not required Amazon to engage in informal discovery, Amazon likely would have succeeded in dismissing Weber's claims. *See* Dkt. 35 at 12-16. That is what happened with McKee.[2]

Amazon's motion should be denied because Amazon failed to meet its burden with its motion and reply, and because its motion and reply were based largely on testimony it would have known was false had it conducted a reasonable review of its business records *before* filing the motion. Regardless, the Court should view Amazon's self-serving evidence with suspicion and it should not draw any inferences in Amazon's favor. *See Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1141 (9th Cir. 1991) ("Before a party to a lawsuit can be ordered to arbitrate and thus be deprived of a

---

[1] The pattern started when Amazon testified that when it "updated its COUs in 2011, it sent a notice to all Amazon account holders, including [McKee], to inform them of the change in terms and the addition of the arbitration provision." Audible Case Dkt. 18-1 at 4-5. Amazon withdrew the argument when McKee argued no notice existed. Audible Case Dkt. 22-1 at 6. It continued when Audible argued that Rogawski saw *the same* webpage that Seth Beals saw. Audible Case Dkt. 73 at 5-6. Audible later admitted that Rogawski saw a webpage with different buttons and disclosures, and now argues such differences should not matter. There may be still other instances where no business records were actually reviewed and/or support Amazon's self-serving testimony.

[2] Amazon submitted a generic Amazon Prime sign-up webpage from 2017 without indicating what content was visible without scrolling, and then resisted McKee's efforts to obtain discovery concerning its 2012 webpages and his sign-up and purchase history. *See* Audible Case Dkt. 18 & 18-10. The Court's ruling may have changed had Amazon been required to produce the records its said supported its self-serving testimony.

day in court, there should be an express, unequivocal agreement to that effect" and the party opposing arbitration receives "the benefit of all reasonable doubts and inferences" as to whether an agreement to arbitrate was formed) (citations omitted).

**II. There is no evidence that Weber pressed a button with a disclosure of Amazon's COU next to it on any of the Agreed Purchase Dates.**

Amazon picked six "Agreed Purchase Dates" on which to base its argument that Weber had inquiry notice of and knowingly and unambiguously agreed to Amazon's *modified* COU. *See* Dkt. 39. Amazon did not pick any dates prior to 2017 because the earlier versions of its webpages did not provide sufficient inquiry notice. *See* Dkt. 30-6.

Weber has rarely used Amazon's desktop website to make purchases and there is <u>no evidence</u> that Weber visited the desktop checkout webpage on any of the Agreed Purchase Dates. Dkt. 39 ¶ 16 (Amazon's records do not show which version of its website Weber used). Weber makes most of his purchases using his smartphone. *See* Dkt. 30-1 ¶ 4; Weber Supp. Decl. ¶ 2. The mobile and app versions of Amazon's checkout webpages are designed so the buttons consumers are <u>most likely to press</u>—the "Place your order" buttons consumers see *after* reviewing their orders—have no disclosure of Amazon's COU next to them. Dkt. 39-17 (mobile version); Dkt. 39-18 (app version). This design flaw is entirely within Amazon's control and was pointed out more than a year ago. *See* Audible Case Dkt. 21-18; Audible Case Dkt. 37 at 13 (nothing prevents Amazon from carefully designing its website to ensure its disclosures are properly located and will secure a consumer's unambiguous assent). A disclosure placed next to a button *that is not pressed* does not give reasonable notice and cannot secure informed consent.

Amazon hopes the Court will *guess* that Weber *must have* pressed a "Place your order" button with a disclosure next to it on one of the Agreed Purchase Dates. But there simply is <u>no evidence</u> that Weber ever did so, and doing so would have been contrary to Weber's habit of using his smartphone, scrolling down to review his order, and pressing the button at the bottom of the webpage (the one with no disclosure next to it). Weber Supp. Decl. ¶ 2. Amazon is not entitled to an inference that forgives its lack of evidence.

The Court should not guess in Amazon's favor and relieve Amazon of the burden of proving the design of its website gave reasonable notice and secured Weber's knowing and unambiguous consent to its modified COU. *Three Valleys*, 925 F.2d at 1141. Because there is no evidence that Weber pressed a "Place your order" button with a disclosure next to it on one of the Agreed Purchase Dates, the Court should deny the motion.

**III. Amazon did not give Weber any notice of its *modified* COU.**

If the Court finds in Weber's favor on the issues discussed above, it does not need to decide whether Weber has an affirmative obligation to inspect and agree to Amazon's then-existing COU each time he visits Amazon.com. If the Court reaches this question, it should still deny the motion because shifting the burden to Weber to discover the *modified* COU is contrary to the rules of contract modifications, notice, and consent.[3]

Amazon wants the rule to be that a consumer who signs up for an account and agrees to a specific version of its COU still has an obligation for the duration of the contractual relationship to (i) press the generic COU hyperlink before completing each purchase, (ii) inspect the COU to see if Amazon has unilaterally modified any terms without notice (without giving consumers the means to identify any modifications or compare COU versions), and (iii) decide whether to agree to any modified terms they discover. Because no other court has shifted the burden of discovering unilateral contract modifications to consumers, Amazon's supplemental brief tries to distinguish case law that supports Weber's position but does not cite any case law that actually supports its own argument that every visit to Amazon.com forms an entirely *new* contract.

Amazon does not have a contractual right to impose modified COU terms without notice. The 2008 COU (the version both parties agree Weber is bound by) states simply: "We reserve the right to make changes to our site, policies, and these Conditions of Use at any time." Dkt. 39-1 at 5. It also states that <u>visiting or shopping at Amazon.com</u>

---

[3] Because Amazon withdrew its Amazon Prime-based arguments, this case is in a significantly different posture than the Audible Case where the Court found McKee's agreement to the Amazon Prime Terms constituted consent to Amazon's COU "as changed over time." Audible Case Dkt. 37 at 17-18 n.7; *see also* Dkt. 35 at 1-2 n.1.

constitutes agreement to "the following conditions." Dkt. 39-1 at 2. Nothing in the 2008 COU (or any subsequent COU) gave Amazon a right to change the COU terms *without notice* or gave consumers an obligation to look for future changes. Weber's reasonable contracting expectations, buttressed by Amazon's duty of good faith and fair dealing, were that Amazon would notify him of any future COU changes and seek his consent. *See, e.g.*, *Plazza v. Airbnb, Inc.*, 2018 WL 583122, at *7-8 (S.D.N.Y. Jan. 26, 2018) (giving account holders affirmative notice of a modified COU and seeking their consent). Notice and informed consent is needed to ensure a "meeting of the minds" actually exists.

Amazon is trying to sidestep contract *modification* rules by arguing that (i) every visit or purchase is a *new* transaction that forms a *new* contract, and (ii) Amazon only needs to provide its existing account holders with notice of the *new* contract terms for each visit and purchase. This argument ignores the fact that Weber and other account holders already agreed to specific COU terms and such terms covered *future* visits and purchases. It also ignores Amazon's own COU terms which have never permitted Amazon to make changes *without notice*.

As explained in his Opposition, the thrust of existing case law favors Weber's position. Consumers, like employees, are entitled to *affirmative notice* of unilaterally modified terms so they can provide (or withhold) their informed consent. The decision in *Douglas v. U.S. Dist. Ct.*, 495 F.3d 1062, 1066 (9th Cir. 2007), made clear that "even if [the plaintiff] had visited the website, he would have had no reason to look at the contract posted there. Parties to a contract have no obligation to check the terms on a periodic basis to learn whether they have been changed by the other side." Amazon is wrong that the *Douglas* ruling was predicated on the plaintiff's *inaction*. Like Weber, the *Douglas* plaintiff had an ongoing contractual relationship based on specific terms, and the court's ruling was based on the basic requirement that companies must give notice of unilaterally modified terms and secure consumers' consent *to the changed terms*.

Amazon also misconstrues the other cases it cites. The decision in *Rodman v. Safeway Inc.*, 2015 WL 604985, at *10-11 (N.D. Cal. Feb. 12, 2015), was based on the

fact that "consumers cannot assent to terms that do not yet exist," consumers "were never given notice that the Special Terms had been altered," and assent to revised terms can only be inferred "after the customer received proper notice *of the proposed changes*." *Id.* at *10-11 (emphasis added; internal marks omitted) (rejecting defendant's attempt to contractually shift the burden of discovering changes to consumers). The decision in *Sawyer v. Bill Me Later, Inc.*, 2010 WL 5289537, at *1-2 (C.D. Cal. Oct. 4, 2010), was based on the fact that the defendant sent the plaintiff a copy of the amended contract terms via email and the plaintiff clicked on and reviewed the terms "at least four times" before continuing to use his account. And the decision in *Nevarez v. Forty Niners Football Co., LLC*, 2017 WL 3492110, at *8 (N.D. Cal. Aug. 15, 2017), did not involve any issues of contract *modification*; it simply determined that the plaintiffs had sufficient inquiry notice of the original terms.

None of the cases either party cites lets Amazon avoid contract *modification* and notice requirements. The Court should not shift the burden of discovering Amazon's unilaterally modified COU to Weber or other existing account holders who already agreed to COU terms that covered *future* visits and purchases. The Court should deny the motion because Amazon's generic disclosure and COU hyperlink never gave Weber notice of the *modified* COU and the new arbitration clause.

**IV. The Court should not infer from Weber's participation in this case that he now has actual knowledge of Amazon's arbitration clause (he does not).**

Weber's March 8, 2018 declaration stated truthfully that he did not know Amazon changed its COU since the 2008 version and that he had "never seen or agreed to any contract terms that required [him] to arbitrate any claims." Dkt. 30-1 ¶ 3. His testimony remains the same: he still has no knowledge of any changes Amazon has made to its 2008 COU. Weber Supp. Decl. ¶ 3. Nothing Amazon points to can change these facts.

Amazon has never given Weber actual knowledge of its modified COU and arbitration clause (e.g., by sending him an actual copy of its current COU). Moreover, Weber's counsel was not required to (and did not) give Weber actual knowledge of

Amazon's modified COUs simply because Amazon filed a motion to compel arbitration based on its modified COUs. Amazon cannot sidestep the requirements of contract law by suggesting that simply filing a motion to compel arbitration and serving it on Weber's counsel gave Weber notice of its modified COUs and new arbitration clause.

Amazon hopes the Court will disregard Weber's testimony and *infer* (incorrectly) that Weber *must have* gained actual knowledge of Amazon's modified COU and arbitration clause through his participation in this case. At a minimum, Amazon hopes the Court will shift Amazon's burden to Weber and hold that, if Weber wanted to remain an Amazon customer after he filed this lawsuit, Weber had an obligation to find and review Amazon's modified COU when he learned that Amazon had filed a motion to compel arbitration and served it on his counsel (not on him).

The Court should not draw any inferences in Amazon's favor and assume that Weber has now gained actual knowledge of Amazon's modified COU and arbitration clause simply because his prior testimony was phrased in the past tense. Nor should the Court hold that, by filing its motion, <u>Amazon was relieved</u> of its burden to give Weber notice of its arbitration clause and secure his unambiguous consent and <u>Weber was obligated</u> to find and review Amazon's *modified* COU before making any new purchases.

If Amazon had fixed the flaws in its website after March 8, 2018, sent a notice of its *modified* COU, and required Weber to consent to its modified COU and arbitration clause in order to remain a customer, its argument may have merit (assuming compliance with Federal Rule of Civil Procedure 23(d), of course). *See Applebaum v. Lyft, Inc.*, 263 F. Supp. 3d 454, 458-63, 469-70 (S.D.N.Y. June 26, 2017). On these facts, however, Amazon is not entitled to have any inferences drawn in its favor that would impute to Weber knowledge of Amazon's modified COUs and arbitration clause where such knowledge does not actually exist. The Court should not let Amazon sidestep its burdens of proof and grant the motion simply because Weber is still an Amazon customer.

Dated: May 11, 2018

SODERSTROM LAW PC
By: */s/ Jamin S. Soderstrom*
Jamin S. Soderstrom

**CERTIFICATE OF SERVICE**

The undersigned certifies that on, May 11, 2018, I caused the foregoing document to be served on all counsel of record by the Court's CM/ECF electronic filing system.

By: */s/ Jamin S. Soderstrom*

Jamin S. Soderstrom