JEDEDIAH WAKEFIELD (CSB No. 178058)
jwakefield@fenwick.com
ARMEN NERCESSIAN (CSB No. 284906)
anercessian@fenwick.com
MATTHEW B. BECKER (CSB No. 291865)
mbecker@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA  94104
Telephone:  415.875.2300
Facsimile:   415.281.1350

ANNASARA G. PURCELL (CSB No. 295512)
apurcell@fenwick.com
FENWICK & WEST LLP
1191 Second Avenue, 10th Floor
Seattle, WA  98101
Telephone:  206.389.4510
Facsimile:   206.389.4511

Attorneys for Defendants
AMAZON.COM, INC. and
AMAZON SERVICES LLC

a

FENWICK & WEST LLP
ATTORNEYS AT LAW

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### (WESTERN DIVISION - LOS ANGELES)

| | |
|---|---|
| ERIC WEBER and BRYAN REES,<br><br>Plaintiffs,<br><br>v.<br><br>AMAZON.COM, INC., and AMAZON SERVICES LLC,<br><br>Defendants. | Case No.: 2:17-cv-08868-GW(Ex)<br><br>**DEFENDANTS' SUPPLEMENTAL REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL ARBITRATION AS TO ERIC WEBER**<br><br>Judge:       George H. Wu<br>Trial Date:  NONE SET |

FENWICK & WEST LLP
ATTORNEYS AT LAW

**TABLE OF CONTENTS**

Page

ARGUMENT ..................................................................................................... 1

I.     MR. WEBER ASSENTED TO AMAZON'S TERMS WHEN MAKING PURCHASES THROUGH ITS DESKTOP AND MOBILE FLOWS. .................................................................................. 1

    A.    Mr. Weber admitted he makes purchases through the Amazon desktop site, which the Court has said would create assent. ................................................................................ 2

    B.    Amazon's mobile checkout also gave Mr. Weber proper notice. .................................................................................. 3

    C.    Mr. Weber's contradiction of his own sworn testimony does not create a meaningful factual dispute as to constructive notice. ..................................................................... 4

II.    BECAUSE MR. WEBER AGAIN ACCEPTED AMAZON'S TERMS AFTER ACKNOWLEDGING THAT THEY HAD CHANGED, THE COURT DOES NOT NEED TO ANALYZE *DOUGLAS*. ........................................................................................ 4

III.   MR. WEBER'S REPEATED ASSENT TO AMAZON'S TERMS REQUIRED NO ADDITIONAL NOTICE UNDER *DOUGLAS*. .................................................................................. 5

IV.   PLAINTIFF'S ARGUMENTS CONCERNING MR. WEBER'S PRIME MEMBERSHIP ARE WRONG AND IRRELEVANT. ......... 6

CONCLUSION .................................................................................................. 7

# TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

*Davis v. Foster Wheeler Energy Corp.*,
  205 Cal.App.4th 731 (2012) ................................................................................. 4

*Ekin v. Amazon Services, LLC*,
  84 F. Supp. 3d 1172 (W.D. Wash. 2014) ......................................................... 5, 6

*Fagerstrom v. Amazon.com, Inc.*,
  141 F. Supp. 3d 1051 (S.D. Cal. 2015) ............................................................... 2

*McKee v. Audible, Inc.*,
  Case No. 2:17-cv-01941-GW-E, Dkt. 37 ......................................................... 3, 7

*Meyer v. Uber Techs., Inc.*,
  868 F.3d 66 (2d Cir. 2017) .................................................................................. 4

*Nicosia v. Amazon.com, Inc.*,
  834 F.3d 220 (2d Cir. 2016) ................................................................................ 2

*Plazza v. Airbnb, Inc.*,
  289 F.Supp.3d 537 (S.D.N.Y. 2018) ................................................................ 5, 6

*Wiseley v. Amazon.com, Inc.*,
  709 F. App'x 862 (9th Cir. 2017) ........................................................................ 2

FENWICK & WEST LLP
ATTORNEYS AT LAW

1    Mr. Weber has agreed to arbitrate disputes with Amazon many times,

2    including within the past two months when there is no question that he was on

3    notice that Amazon's terms contained an arbitration provision.  Faced with clear

4    evidence of assent, Mr. Weber now attempts to muddy the record by contradicting

5    his earlier sworn declaration and manufacturing factual disputes where none exist.

6    This new testimony fails to overcome the stipulated evidence that Mr. Weber had

7    inquiry notice of Amazon's Conditions of Use, and subsequently agreed to them.

8    Plaintiff also fails to do the one thing the Court asked: provide case law about

9    whether the Ninth Circuit's *Douglas* decision allows Plaintiff to invalidate

10   agreements he accepted when engaging in new transactions governed by new terms.

11   *See* Dkt. 35 at 16 and n.1.  No court has interpreted *Douglas* as broadly as Plaintiff

12   seeks, and the Court should decline to do so here.

13                                                   **ARGUMENT**

14   **I.     MR. WEBER ASSENTED TO AMAZON'S TERMS WHEN MAKING**

15          **PURCHASES THROUGH ITS DESKTOP AND MOBILE FLOWS.**

16          Plaintiff attempts to manufacture a factual dispute to avoid the obvious and

17   necessary result of Mr. Weber's repeated assent to Amazon's terms.  He claims that

18   he does not know the specific dates on which he used the desktop checkout process

19   to make purchases (which the Court has ruled would constitute assent), as opposed

20   to the mobile checkout process (which the Court has not ruled on, but which also

21   creates assent).  But a single desktop purchase is sufficient to bind Mr. Weber to the

22   arbitration clause; no inference against him is necessary, as he admits he made

23   multiple recent purchases on the desktop purchase flow.  Moreover, Amazon's

24   *mobile* purchase flow meets the criteria that the Court applied in finding that the

25   desktop flow affords proper notice.  Plaintiff's tortured argument that he clicks only

26   the lower purchase button on the mobile checkout not only contradicts his earlier

27   testimony, but is immaterial under the governing "inquiry notice" standard.  Under

28   any objectively reasonable test, a notice *at the top of a purchase confirmation*

FENWICK & WEST LLP
ATTORNEYS AT LAW

DEFENDANTS' SUPP. REPLY ISO
MTN. TO COMPEL ARBITRATION            1            Case No. 2:17-cv-8868-GW(Ex)

1  *page*—stating "by completing your purchase" you agree to conditions of use—

2  provides valid notice of those terms.

3        **A.**    **Mr. Weber admitted he makes purchases through the Amazon**

4               **desktop site, which the Court has said would create assent.**

5        Plaintiff suggests that the Court cannot determine whether Mr. Weber made

6  purchases on the Amazon desktop website (which the Court has already said would

7  constitute assent, Dkt. 35 at 13-14), or if he did so via the mobile website.  But Mr.

8  Weber admitted in two signed declarations that he makes at least some of his

9  purchases—including recent purchases—on the desktop.  Dkt. 30-1 ¶ 4; Dkt. 44-2

10  ¶ 2.  Between his two accounts, Mr. Weber placed several hundred purchase orders

11  on Amazon using standard checkout flows after Amazon introduced the arbitration

12  provision on August 19, 2011.  *See* Dkts. 39-14, 39-15 (listing Mr. Weber's

13  purchase history, including purchase dates); *see also* Dkt. 39 at ¶ 14 ("Mr. Weber

14  does not dispute that he has used the standard checkout method.").  By Mr. Weber's

15  own estimate, roughly 20% of these would have occurred on the Amazon desktop

16  checkout flow.  Dkt. 44-2 ¶ 2.  The specific dates of those purchases are immaterial.

17  Any one of those purchases bound Mr. Weber to the arbitration clause.[1]  (By

18  contrast, Mr. Weber collectively placed fewer than two dozen purchases on his

19  Amazon accounts *before* August 19, 2011.  *See* Dkts. 39-14, 39-15.)

20

21

22  [1] Plaintiff erroneously suggests that Amazon's historical desktop checkout flows,
23  which were at issue in *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220 (2d Cir. 2016),
did not offer sufficient inquiry notice.  *See* Dkt. 44 at 3 (citing Dkt. 30-6).  But, as
24  Amazon pointed out in its original reply on this motion (*see* Dkt. 33 at 9-10), those
flows contain the same disclosures that the Southern District of California approved
25  in *Fagerstrom v. Amazon.com, Inc.*, 141 F. Supp. 3d 1051 (S.D. Cal. 2015).
*Compare* Dkt. 30-6 (flows from *Nicosia*), *with* Dkt. 33-5 (flow from *Fagerstrom*).
26  Indeed, in affirming *Fagerstrom*, the Ninth Circuit held those pages gave the
plaintiff a "'reasonable opportunity to understand' that he would be bound by
27  additional terms." *Wiseley v. Amazon.com, Inc.*, 709 F. App'x 862, 864 (9th Cir.
28  2017).

FENWICK & WEST LLP
ATTORNEYS AT LAW

**B.     Amazon's mobile checkout also gave Mr. Weber proper notice.**

Even if Mr. Weber had not admitted that he made purchases via the Amazon desktop, his purchases through the mobile checkout flow would also create assent. Plaintiff wrongly suggests that Amazon's mobile checkout flow contains a legally fatal "design flaw" that was "pointed out more than a year ago" in connection with an earlier motion to compel in the related *McKee v. Audible* case.  *See* Supp. Opp. at 3.  But this Court did not rule on the sufficiency of *Amazon's* mobile checkout page in the *McKee* case, and the order Plaintiff cites largely concerns the sufficiency of *Audible's* mobile *sign-up* page—not Amazon's mobile *checkout* page.  *See McKee v. Audible, Inc.*, Case No. 2:17-cv-01941-GW (Ex), Dkt. 37 at 11-13.  To the extent that this Court in *McKee* discussed Amazon's checkout flows, it held that the "checkout page provides sufficient notice of the Amazon COU" and furnished a valid basis for compelling arbitration as to Amazon.  *See id.* at 17 n.7.

Amazon's mobile checkout page contains features and design elements that the Court cited as reasons that the standard Amazon desktop flow affords constructive notice.  *See* Dkt. 35 at 13-14.  Like the Amazon desktop flow, the disclosures are immediately visible without scrolling.  The Amazon mobile checkout page informs the customer *at the very top of the checkout screen*, called out in hyperlinked text, "By placing your order, you agree to Amazon.com's privacy notice and conditions of use."  Dkts. 39-17 and 39-18.  This notice is the first thing a customer sees on the checkout page, and it is immediately *above* a checkout button.  Customers are directed exactly where to click to read the terms. These disclosures are not buried at the bottom of the page, on a submerged screen, or obscured through pop-ups or keyboards.  The disclosure also uses linguistic precision that corresponds to the action being taken (placing an order).  *See* Dkt. 35 at 13-14 (citing cases).  This page provides clear constructive notice, and the fact that a user can also scroll to read other parts of the same page does not change that.

FENWICK & WEST LLP
ATTORNEYS AT LAW

**C.     Mr. Weber's contradiction of his own sworn testimony does not create a meaningful factual dispute as to constructive notice.**

Mr. Weber next attempts to manufacture a factual dispute by contradicting his prior testimony.  He suggests that, when using Amazon's mobile checkout, he *always* scrolls past the upper checkout button with adjacent disclosure, and instead clicks on the lower checkout button on the same page.  *See* Dkt. 44-2 ¶ 2.  This statement contradicts his sworn declaration from two months ago, in which he stated that he "cannot be sure" which button on the mobile checkout page he uses. Dkt. 30-1 ¶ 4.  The Court does not need to consider statements in which a party contradicts himself in order to manufacture a factual dispute.  *See Davis v. Foster Wheeler Energy Corp.*, 205 Cal. App. 4th 731, 736 (2012).  Moreover, even if this new testimony could be believed, it makes no difference.  The standard for assent is constructive notice, not subjective practice or personal habit.  The disclosures at the top of Amazon's mobile checkout flow puts a reasonably prudent person on notice that making a purchase requires assent to its terms.  *See, e.g., Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 77-78 (2d Cir. 2017).  Mr. Weber may have chosen to ignore the disclosures that Amazon showed him, but he is still bound by them under an objective standard.

**II.     BECAUSE MR. WEBER AGAIN ACCEPTED AMAZON'S TERMS AFTER ACKNOWLEDGING THAT THEY HAD CHANGED, THE COURT DOES NOT NEED TO ANALYZE *DOUGLAS*.**

On March 7, 2018, seeking to avoid enforcement of Amazon's arbitration agreement, Mr. Weber acknowledged that Amazon's terms had changed: "*I did not know* that Amazon has periodically and unilaterally modified the contract terms I agreed to." Dkt. 30-1 ¶ 3 (Weber declaration "in Support of His Opposition to Amazon's Motion to Compel *Arbitration*") (emphases added).  Just days later, Mr. Weber went on the Amazon website and placed several additional orders, and thereby agreed to the terms once again. Dkt. 39-15 at 11.  The fact that he knew

FENWICK & WEST LLP
ATTORNEYS AT LAW

1  that the terms had changed and still consented to them means the Court does not

2  need to address the *Douglas* question.

3      In an attempt to put the toothpaste back in the tube, Plaintiff raises the

4  remarkable argument that—despite opposing this pending motion to compel

5  arbitration—he *still doesn't know* that Amazon had changed its terms to include an

6  arbitration agreement.  Supp. Opp. at 6-7.  He asserts that "Amazon has never given

7  Weber *actual knowledge* of its modified COU."  Supp. Opp. at 6 (emphasis added).

8  But the law does not require "actual knowledge" of an agreement's precise terms.

9  *See, e.g.*, *Plazza v. Airbnb, Inc.*, 289 F. Supp. 3d 537, 548 (S.D.N.Y. 2018) ("A

10  person can manifest assent to contractual terms even without actual notice of those

11  terms.").  That cannot logically be the standard because Amazon could never force

12  a customer to read the terms.  Plaintiff carefully avoids saying that he does not *have*

13  *notice* of the existence of such terms.  Dkt. 44-2 ¶ 3.  To the contrary, his previous

14  declaration makes clear that he had notice that Amazon had updated its terms and

15  yet he agreed to them again anyway.[2]

16  **III.   MR. WEBER'S REPEATED ASSENT TO AMAZON'S TERMS**

17        **REQUIRED NO ADDITIONAL NOTICE UNDER *DOUGLAS*.**

18      The rule that *Douglas* and subsequent cases set is that a modified contract

19  functions as if it were a new agreement.  Under *Douglas*, a business may not rely

20  on a customer's acceptance of the original contract to provide assent to new terms

21  simply because of a customer's mere inaction or continued use of a service.

22      That is not the issue here.  Amazon does not rely on Mr. Weber's original

23  acceptance of its terms when he first made a purchase from Amazon, because Mr.

24  Weber subsequently engaged in new and independent transactions.  In doing so, he

25  accepted Amazon's updated terms, which—since August 2011—have contained an

26  arbitration and class waiver provision.  Mr. Weber was provided constructive notice

27           [2] The Amazon arbitration provision has retroactive effect.  *Ekin v. Amazon Servs.*,

28  *LLC*, 84 F. Supp. 3d 1172, 1178 (W.D. Wash. 2014).

FENWICK & WEST LLP
ATTORNEYS AT LAW

1  of the terms during checkout, and he provided his assent when he placed an order.

2  Without any legal support, Plaintiff argues for a higher standard for assent in

3  every instance where two parties had agreed to an earlier contract and later enter

4  into a new one.  But the cases Plaintiff cites hold the exact opposite.  For instance,

5  in *Plazza v. Airbnb, Inc.*, a court held that Airbnb users were bound by an

6  arbitration clause added to Airbnb's terms after those customers had first joined the

7  service, because they subsequently agreed to the modified terms.  289 F. Supp. 3d

8  at 547-554.  There, the court found that Airbnb provided sufficient notice of its new

9  terms by requiring customers to agree to them before continuing to use the service.

10  Although Airbnb also sent emails to users about the new terms, these emails were

11  "yet another form of notice," *but were not necessary to the holding.  Id.* at 550-51

12  ("Even without the notice provided after the terms of service were modified, I find

13  that Airbnb's original sign-up procedure was sufficient inquiry notice . . . .").

14  At least one other court has enforced Amazon's arbitration agreements

15  against customers who previously agreed to Amazon COU before Amazon added

16  the arbitration provision.  *Ekin*, 84 F. Supp. 3d at 1177.  There, in granting

17  Amazon's motion to compel arbitration, the court noted that the proper analytical

18  framework is not whether the pre-2011 agreement had been *modified*, because new

19  transactions with Amazon constituted new, binding agreements.  *Id*.  This Court

20  should reach the same conclusion here.

**IV.  PLAINTIFF'S ARGUMENTS CONCERNING MR. WEBER'S PRIME MEMBERSHIP ARE WRONG AND IRRELEVANT.**

23  Plaintiff also attacks Amazon for its decision to withdraw Mr. Weber's

24  Amazon *Prime* sign-up as a potential basis for assent.  According to Plaintiff,

25  Amazon's decision "calls into question the veracity and reliability" of the *stipulated*

26  evidence of Mr. Weber's desktop and mobile purchase flows.  Not so.  In inviting

27  this further briefing, the Court instructed that it was to concern the *Douglas* issue.

28  Dkt. 35 at 17.  The Court separately required the parties to confer and, where

FENWICK & WEST LLP
ATTORNEYS AT LAW

DEFENDANTS' SUPP. REPLY ISO
MTN. TO COMPEL ARBITRATION        6        Case No. 2:17-cv-8868-GW(Ex)

1  possible, stipulate to the accuracy of screen shots of purchase flows that Mr. Weber

2  used.  The parties did so.  *See* Dkt. 39.  The court further stated that Amazon may

3  submit evidence regarding the activation of Mr. Weber's membership in Amazon

4  Prime, but Amazon was not obligated to do so.[3]  Dkt. 35 at 16-17.  Amazon

5  accepted the Court's suggestion to streamline the evidence, focusing on

6  representative screen shots of particular sign-ups showing that Mr. Weber accepted

7  Amazon's Conditions of Use.  This is not a concession of anything, and certainly

8  does not support Plaintiff's overreaching attempt to convince the Court to disregard

9  the *stipulated* evidence of Mr. Weber's repeated acceptance of Amazon's terms. [4]

10  ## CONCLUSION

11      For the reasons stated above, the Court should enforce Mr. Weber's

12  agreements with Amazon and grant Amazon's motion to compel arbitration.

13  Dated:  May 25, 2018                    FENWICK & WEST LLP

14                                          By: */s/ Jedediah Wakefield*
                                                Jedediah Wakefield
15
                                            Attorneys for Defendants AMAZON.COM,
16                                          INC. and AMAZON SERVICES LLC

17

18

19

20  _____

21  [3] As the Court is aware, Amazon Prime gives users access to free two-day delivery,
    streaming video and music, and other benefits for a monthly or yearly fee.  It is not
22  necessary to join Amazon Prime to make purchases from Amazon, and Mr. Weber
    repeatedly made purchases, and agreed to Amazon's Conditions of Use, separately
23  from any Amazon Prime subscription.

24  [4] Plaintiff's opposition also raises a baseless claim that Audible misrepresented the
    disclosures that Michael Rogawski, a plaintiff in the related *McKee* action, saw
25  when he redeemed an Audible credit in 2015.  Supp. Opp. at 2 n.1.  In fact, that
    credit redemption page contained the same hyperlinked disclosure language that
26  Mr. Beals saw ("By completing your purchase, you agree to Audible's Conditions
    of Use and Privacy Notice."), and merely contained *additional* information
27  pertaining to the release date for the pre-order.  Audible expects that a stipulation
    detailing the buy box that Mr. Rogawski saw is forthcoming.
28

FENWICK & WEST LLP
ATTORNEYS AT LAW